IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) BYRON CORNIELUS YOUNG, JR., <br><br> Plaintiff, <br> vs. <br><br> (1) MCCURTAIN COUNTY JAIL TRUST, <br><br> (2) KEVIN CLARDY, in his official capacity <br><br> (3) LARRY HENDRIX, in his individual capacity <br><br> (4) KENNETH JENNINGS, in his individual capacity, <br><br> (5) BRITTANY STOCKTON, in her individual capacity, <br><br> Defendants. | Case No.   CIV-24-138-GLJ <br><br> JURY TRIAL REQUESTED |

**COMPLAINT**

COMES NOW the Plaintiff, Byron Cornelius Young, Jr. ("Plaintiff" or "Young"), by and through his attorneys of record, and for his causes of action against the Defendants, alleges and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a resident of McCurtain County, State of Oklahoma.

2. Defendant McCurtain County Jail Trust ("Jail Trust") is a public trust organized under 60 O.S. § 176 *et seq*. The Jail Trust employs the staff at the McCurtain County Detention Center (MCDC) and is responsible for the operational aspects of the MCDC, including the training and supervision of staff. Jail Trust is the entity charged with final policy making authority regarding the operation of the MCDC in this case.

3. Defendant Kevin Clardy ("Sheriff Clardy" or "Defendant Clardy") is, and was at all times relevant hereto, the Sheriff of McCurtain County, Oklahoma, residing in McCurtain County, Oklahoma and acting under color of state law. Sheriff Clardy also serves as Chairman of the McCurtain County Jail Trust Board of Trustees at all times relevant hereto, and, according to the official McCurtain County web page, "[h]as [the] power and authority to operate the County Jail."[1] Clardy described his role at the MCDC in an interview with the McCurtain Gazette on or about December 2, 2021 as follows:

> In the recent interview, when asked about the jail trust, [McCurtain County Sheriff Kevin Clardy] said, by state law, the jail trust only manages financial aspects of the jail, [and] the sheriff does everything else.
>
> "State law states the sheriff has full control of the jail and its employees. That's state law, but the jail trust is over all financial aspects of the jail," Clardy said.
>
> "The jail trust is set up, in my opinion, not the way state law says it should be, but the way it went into effect by the vote of the people. The jail trust is over financial actions of the jail. It's set up that way. Always has been since 1998 when it went into effect."[2]

4. Defendant Clardy, as Sheriff and Chairman of the McCurtain County Jail Trust, was, at all times relevant hereto, responsible for ensuring the safety and well-being of inmates detained and housed at the MCDC, including the provision of appropriate medical and mental health care and treatment to inmates in need of such care, pursuant to 57 O.S. § 47. Additionally, Defendant Clardy was responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedures, and/or customs of the Pittsburg County Sheriff's

---

[1] *See,* https://mccurtain.okcounties.org/offices/county-sheriff.

[2] *See,* Chris Willingham*, More jail employees are fired; Hendrix eyed as administrator,* McCurtain Gazette (12/2/21), https://mccurtaingazettenews.com/more-jail-employees-are-fired-hendrix-eyed-as-administrator/

Department and Pittsburg County Jail, including the policies, practices, procedures, and/or customs that violated Plaintiff's rights as set forth in this Complaint.

5. Defendant Clardy is sued in his official capacity as Sheriff and Chairman of the McCurtain County Jail Trust. "A claim against a government actor in his official capacity is essentially another way of pleading an action against the county he represents." *Revilla v. Glanz*, 7 F.Supp.3d 1207, 1217 (N.D. Okla. 2014). Thus, naming McCurtain County Sheriff Kevin Clardy in his official capacity in this action is the functional equivalent of suing McCurtain County ("hereinafter referred to as "the County"). *Id.*; *Moran v. Unknown Nurse #1*, 2015 WL 9593622 *1 (N.D. Okla.) (holding "a suit against the sheriff in his official capacity is the same as naming the county").

6. Upon information and belief to be confirmed through discovery, Defendant Larry Hendrix ("Hendrix") is, and was at all times relevant hereto, a resident of McCurtain County, Oklahoma. Defendant Hendrix was at all times relevant hereto, acting under color of state law as an employee of the County and/or Defendant McCurtain County Jail Trust and is being sued in his individual capacity for his personal involvement and participation in the violation of Plaintiff's constitutional rights.

7. Upon information and belief to be confirmed through discovery, Defendant Kenneth Jennings ("Jennings") is, and was at all times relevant hereto, a resident of McCurtain County, Oklahoma. Defendant Jennings was at all times relevant hereto, acting under color of state law as an employee of the County and/or Jail Trust and is being sued in his individual capacity for his personal involvement and participation in the violation of Plaintiff's constitutional rights.

8. Upon information and belief to be confirmed through discovery, Defendant Kurtis Fields ("Fields") is, and was at all times relevant hereto, a resident of McCurtain County,

Oklahoma. Defendant Fields was at all times relevant hereto, acting under color of state law as an employee of the County and/or Jail Trust and is being sued in his individual capacity for his personal involvement and participation in the violation of Plaintiff's constitutional rights.

9. Upon information and belief to be confirmed through discovery, Defendant Brittany Stockton ("Stockton") is, and was at all times relevant hereto, a resident of McCurtain County, Oklahoma. Defendant Stockton was at all times relevant hereto, acting under color of state law as an employee of the County and/or the Jail Trust and is being sued in her individual capacity for her personal involvement and participation in the violation of Plaintiff's constitutional rights.

10. At all relevant times to this action, the MCDC employees were acting under color of state law and within the scope of their employment and/or authority as employees, agents, and/or servants for the County and/or Jail Trust.

11. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

12. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

14. Plaintiff previously filed his claims against these Defendants on July 19, 2022 in *Young v. Board of County Commissioners of McCurtain County, Oklahoma, et al.,* Case No. 22-CV-207-RAW ("Reagan I"). Plaintiff and the Defendants filed a Joint Stipulation of Dismissal

Without Prejudice in that case, dismissing Plaintiff's claims *without* prejudice on April 21, 2023. *See* Y*oung I*, Dkt. # 69. Therefore, this action is being re-filed within one (1) year pursuant to 12 O.S. § 100.

## FACTUAL ALLEGATIONS

15. Paragraphs 1 through 14 are incorporated herein by reference.

- **DEFENDANT JENNINGS SEPTEMBER 7, 2021 EXCESSIVE FORCE**

16. On or about the morning of September 7, 2021, Plaintiff got into a verbal altercation with another inmate, Willie Bennett. Shortly afterward, a Jail Supervisor known to Plaintiff as "Cody" asked Plaintiff if he was alright. Plaintiff responded yes. As Plaintiff went to his cell, Cody followed and informed Plaintiff that he would have to change cells as jail protocol dictated that after an altercation the involved inmates be separated.

17. At this time, Defendant Kenneth Jennings entered the pod and made his way upstairs to Plaintiff's cell with a weapon believed to be a "JPX Jet Protector Gun" (JPX gun) already unholstered.

18. On information and belief, the McCurtain County Jail had just received the weapon around the end of August 2021.

19. Plaintiff complied with Defendant's Cody's directive to change cells and began to gather his belongings.

20. Deputy Jennings escalated the situation by forcefully interjecting himself into the matter. Deputy Jennings ordered Plaintiff to stop gathering his belongings and to leave them in the cell. Cody and Defendant Jennings, with Defendant's Jennings' JPX gun drawn and the red laser sight active, escorted a fully-compliant Plaintiff downstairs.

21. At the door to exit the pod, Defendant Jennings again escalated the situation by making verbal threats and aiming the JPX gun directly at Plaintiff's eyes.

22. After Plaintiff had complied with all of the instructions given, Defendant Jennings, while standing outside the drunk tank cell door, raised the JPX gun and fired it directly into Plaintiff's eyes.

23. The mace from the pepper ball dispersed over Plaintiff's hair, eyes and face causing Plaintiff breathing difficulty and the temporary inability to open his eyes.

24. Defendant Jennings then entered the cell and taunted Plaintiff with remarks such as "Bitch how does that feel" and "Now you are going to sit there and think about talking shit, before fucking with me again."

25. Immediately thereafter Plaintiff, in pain, gasping for air, and crying out for help was locked in the cell by Defendants Jennings and Cody.

26. Due to lack of response and delay in receiving help from jail officials, Plaintiff undertook to remove the mace from his head, face and eyes with toilet water because the sink in the drunk cell was not working.

27. Defendant Jennings observing Plaintiff's pain, agony and efforts at self-help quipped "How does that shit water taste?"

28. Plaintiff despite all efforts was unable to remove the pepper spray from his upper extremities with the toilet water. Five minutes later, MCDC supervisor Cody returned and offered Plaintiff a shower.

29. During the shower, another MCDC employee, Defendant Curtis Fields, relieved Cody. When Plaintiff asked Defendant Fields for more of the cleaning solution that Cody had given him to remove the pepper spray, Fields said "There ain't anymore."

30. When Plaintiff asked why Fields was refusing him more cleaning solution to remove the pepper spray, Fields drew his JPX gun, pointed it at Plaintiff and refused to allow him to finish showering off the pepper spray.

31. Fields while pointing the JPX gun at Plaintiff, forced Plaintiff to walk out of the shower into the booking and medical area fully naked and exposed.

32. Deputy Fields watched as Plaintiff endured the humiliation of having to walk across the common area to get more cleaning solution for himself.

33. When Plaintiff asked Deputy Fields, a second time, why he had denied him the cleaning solution, Deputy Fields responded by drawing the JPX gun, aiming it at Plaintiff and directing Plaintiff to walk back from the booking and medical area to the drunk tank, naked and exposed as female staff watched from the Central Control booth.

34. Plaintiff, after the September 7, 2021, incident, suffered from the harmful effects of having been shot with a pepper ball from the JPX gun for approximately 2 weeks before the burning sensation to his eyes, scalp and genitals finally stopped.

- **DEFENDANT STOCKTON'S USES OF EXCESSIVE FORCE**

35. On or about April 16, 2022, Plaintiff and Defendant Brittany Stockton engaged in an argument regarding Plaintiff's breakfast food.

36. Defendant Stockton thereafter began taunting Plaintiff in the presence of other inmates. Defendant Stockton left the vicinity and returned shortly thereafter, pulled a bucket up to the door, sat on it, and began calling Plaintiff names.

37. Thereafter, as Plaintiff was attempting to eat, Defendant Stockton without cause, shot Plaintiff in the face with the JPX gun while Plaintiff was praying over his food.

38. Plaintiff was forced to remain in isolation for approximately 15 minutes before being allowed to shower and offered medical assistance for his injuries.

39. Later, on or about June 5, 2022, while walking Plaintiff to his cell, Defendant Stockton and Plaintiff began to argue. Stockton apparently became upset and unholstered her JPX gun and shot Plaintiff, who was walking ahead her, in the back of the head. P

40. Plaintiff was not resisting or offering any physical threat to Stockton at the time she deployed her JPX gun.

41. As a consequence of being shot in the head by Defendant Stockton, Plaintiff was nearly knocked off his feet and sustained serious injury.

- **RETALIATION AND TRANSFER TO CHOCTAW COUNTY JAIL**

42. Following the June 5, 2022 encounter, Plaintiff submitted numerous written grievances in regard to Defendant Stockton's improper use of her JPX gun.

43. In response to one of the grievance, Plaintiff spoke with an officer from internal affairs regarding Stockton's behavior.

44. Days after speaking with the internal affairs officer, Plaintiff was transferred from McCurtain County Jail to Choctaw County Jail without the benefit of a hearing, or notice.

45. In retaliation for Plaintiff seeking administrative relief; requesting that charges be filed against Defendant Stockton for the two JPX gun shootings; and, speaking with officers from internal affairs, Defendant Hendrix ordered that Plaintiff be taken to Choctaw County Jail.

46. Upon arrival at the Choctaw County Jail, Plaintiff filed a Request to Staff asking why he was at the facility. Choctaw County Jail staff responded by advising that they did not know why Plaintiff was transferred to the Jail.

47. While being detained in the Choctaw County Jail, Plaintiff was physically attacked and beaten by several inmates. As a result of the attack, Plaintiff sustained contusions, swollen eyes, and a burst blood vessel in his eye.

48. After the attack, Plaintiff was in need of medical attention but was told by Choctaw County Jail staff that medical attention would need to be provided by the County/Jail Trust.

49. Plaintiff was handcuffed to a bench where he was left to wait for MCDC employees to pick him up.

50. As a consequence of the Defendants culpable conduct, Plaintiff suffered damage to his retina, which continues to cause him to see flashing lights, and constant headaches.

- **MCDC'S DANGEROUS HISTORY**

51. The County and/or Jail Trust has maintained a culture of indifference that has allowed violence to flourish within MCDC. The County and/or Jail Trust has repeatedly staffed the MCDC with underqualified and undertrained employees, whom have repeatedly used unnecessary and inappropriate force. The County and/or Jail Trust is aware of these problems but has failed to make any efforts to rectify the sub-par conditions that lead to routine violent acts within MCDC.

52. The above-referenced constitutional violations to which Plaintiff was subjected were in furtherance of, consistent with, and causally connected to the policies, customs, and practices that the County and/or Jail Trust had previously created, implemented, observed, maintained, and/or tolerated.

53. The Jail Trust has a history of permitting its personnel to engage in unnecessary, unreasonable and excessive force on MCDC detainees, inmates, and other prisoners who pose no threat.

54. For instance, on February 13, 2015, Corley Carter, an inmate at the MCDC, died after suffering an anoxic brain injury. The brain injury was caused by the MCDC staff (1) unnecessarily placing Carter in a restraint chair, (2) a use of force incident in the MCDC shower room that involved several documented and undocumented uses of a TASER, and (3) an injury to Carter's neck. *See Carter v. McCurtain County Jail Trust,* Case No. 16-CIV-008-JHP.

55. Another civil rights lawsuit was filed in this Court against the McCurtain County Jail by Andrew Harris, who complained that an MCDC physically assaulted him without provocation, following which that deputy and another deputy jointly engaged in an unconstitutionally excessive use of force. *See Harris v. McCurtain County Jail Trust,* Case No. CIV-12-143-RAW. According to the Complaint filed in by Harris, MCDC staff used excessive force which caused Mr. Harris to suffer a dislocated shoulder. *Id.,* Dkt. #1, pp. 3 & 7.

56. The County and/or Jail Trust were clearly on notice that their practice of staffing the MCDC with underqualified and undertrained staff, substantially increases the risks of staff-on-inmate violence, as evidenced by the inmate incidents identified above.

57. Furthermore, the above-referenced constitutional violations to which Plaintiff was subjected arose under circumstances that constitute usual and recurring situations with which MCDC officers and/or administrators, supervisors, detention officers, medical staff, and other personnel must routinely deal and/or have regularly or previously dealt

58. Further, the County and/or Jail Trust have utterly failed to properly train and supervise the staff at its detention facilities, including DCF. CoreCivic facilities, including DCF, have a policy, practice, and/or custom of failing to train and supervise their prison employees in

59. It is clear through Defendant Jennings actions that he was not trained in how to

deescalate situations with inmates, which resulted in him deploying his JPX gun at the Plaintiff when there was no need to do so.

60. The County and/or Jail Trust were clearly on notice that their practice of failing to train employees in how to supervise and protect inmates, substantially increases the risk of staff-on-inmate violence. However, the County and/or Jail Trust failed to alleviate the known and obvious risks in deliberate indifference to the rights of inmates like Plaintiff

61. Due to the County and/or Jail Trust's apathetic, and almost non-existent, approach to employee discipline for violations of use of force policies, there was an atmosphere of tolerance of, and acquiescence in, excessive use of force. In other words, there was no consequential accountability for employees' use of excessive force within the MCDC.

**COUNT I. EXCESSIVE USE OF FORCE IN VIOLATION OF THE FOURTEENTH AMENDMENT**
**(42 U.S.C. § 1983)**
**(*AS TO DEFENDANTS JENNINGS AND STOCKTON*)**

62. Paragraphs 1-61 are incorporated herein by reference.

63. At the time of the events described herein, Plaintiff, as a pretrial detainee, had a clearly-established constitutional right under the Fourteenth Amendment to be secure in his person and free from objectively unreasonable and/or excessive force

64. The use of violent force by Defendants Jennings and Stockton on a non-combatant Plaintiff was excessive and constitutes unnecessary and wanton infliction of pain against the Plaintiff. Indeed, the use of violent force against Plaintiff, as described herein, was maliciously and sadistically calculated to cause harm, in violation of Mr. Wise's clearly established Fourteenth Amendment rights.

65. At the time the Defendants used excessive physical force on Plaintiff, Plaintiff was not exhibiting any meaningful physical resistance to Defendants.

66. At the time the Defendants used excessive physical force on Plaintiff, there was no need for the application of such force.

67. At the time the Defendants used excessive physical force on Plaintiff, the threat to said Defendants' safety posed by Plaintiff was minimal or nonexistent.

68. Defendants' effort to temper the severity of a forceful response was grossly inadequate.

69. Accounting for any potential legitimate interests [stemming from the government's] need to manage the facility in which the individual is detained, the violent force used on Plaintiff was objectively excessive, constitutionally unreasonable, and disproportionate to any legitimate interest in managing MCDC.

70. The force purposely and knowingly used against Plaintiff when shot with the JPX gun was objectively unreasonable and was not rationally related to a legitimate government purpose

71. Any reasonable officer knew or should have known of Plaintiff's above-referenced rights at the time of the events upon which Plaintiff's claims are based, as such rights were clearly established.

72. Plaintiff suffered significant physical pain and mental anguish as a proximate result of the Defendants' excessive use of force.

73. Plaintiff is entitled to compensatory damages in an amount to be determined at trial.

74. Plaintiff is entitled to punitive damages on his claims brought against Defendants Jennings and Stockton as their conduct, acts and omissions alleged herein constitute reckless or callous indifference to Plaintiff's federally protected rights.

**CLAIM II: FAILURE TO PROVIDE MEDICAL CARE IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES**

**(42 U.S.C. § 1983)**
*(AS TO DEFENDANTS JENNINGS AND FIELDS)*

75. Paragraphs 1-74 are incorporated herein by reference.

76. After being shot with the JPX gun on September 7, 2021, Plaintiff had obvious, severe, and emergent medical needs that were known and obvious to Defendants Jennings and Fields.

77. Defendants Jennings and Fields disregarded the known and obvious risks to Mr. Reagan's health when they flatly refused to allow Plaintiff to wash off the pepper spray which covered Plaintiff's body.

78. Defendants Jennings and Fields knew that delays in treating Plaintiff's serious medical needs, and/or the denial of any such treatment, would likely expose Plaintiff to a substantial risk of pain.

79. Despite knowledge of the foregoing, Defendants Jennings and Fields:

   a. Summarily and arbitrarily denied Plaintiff's repeated requests for medical services;

   b. Failed to render first aid immediately (or to administer any medical attention whatsoever);

   c. Failed to notify a supervisor of Plaintiff's medical condition;

   d. Failed to fully or accurately document the events giving rise to Plaintiff's injuries, or the actions MCDC personnel took (or failed to take) in response to those injuries.

80. As a direct and proximate result of this deliberate indifference, as described above, Plaintiff experienced unnecessary physical pain, a worsening of his condition, severe emotional distress, mental anguish, degradation, oppression, humiliation, and embarrassment.

81. The aforementioned acts and/or omissions of the Defendants were malicious, reckless and/or accomplished with a conscious disregard Plaintiff's rights thereby entitling Plaintiff to an award of exemplary and punitive damages.

### CLAIM III. FIRST AMENDMENT RETALIATION
### (42 U.S.C. § 1983)
### (*AS TO DEFENDANTS CLARDY AND HENDRIX*)

82. Paragraphs 1 through 81 are incorporated herein by reference.

83. Plaintiff engaged in the protected activity of petitioning the government and engaging in free speech by complaining to jail authorities and reporting Defendant Stockton's conduct, as described above.

84. Defendant Hendrix was aware that Plaintiff engaged in this protected activity.

85. Within days of his grievances, and just a day after he spoke to internal affairs, Plaintiff was transferred to Choctaw County Jail for no reason other than to intimidate and discourage him from filing more grievances against MCDC jail employees.

86. Plaintiff was transferred to Choctaw County Jail by the County and Defendant Hendrix in retaliation for the grievances and complaints he had filed against MCDC employees

87. Defendant Hendrix's actions would have chilled a person of ordinary firmness from continuing to engage in protected speech, including bringing his complaints to jail authorities or the Court, and reporting crimes to police.

88. Defendant Hendrix took these retaliatory actions because he was substantially motivated to retaliate against Plaintiff for engaging in protected speech.

89. None of Defendant Hendrix's actions were related to a legitimate penal interest.

90. Said retaliation resulted in permanent physical and mental injuries to Plaintiff as a consequence of having been assaulted, severely injured, and denied medical treatment while in

Choctaw County jail.

91. Defendant Clardy and/or the County was aware that Plaintiff was being retaliated against for exercising his First Amendment rights, but failed to take any action to stop the retaliation.

92. Defendant Clardy and/or the County also failed to provide training regarding inmates' First Amendment rights and unconstitutional retaliation by deputies and supervisors for the exercise of those rights.

93. The inadequate training and/or supervision provided by Defendant Clardy and/or the County results from a conscious or deliberate choice to follow a course of action among various alternatives available to them.

94. The inadequacy of appropriate training and/or supervision is so likely to result in the violation of constitutional rights, such as those described herein, that Defendant Clardy and/or the County is liable for their failure to appropriately hire, train and/or supervise MCDC staff.

95. Defendants acted with malice and reckless indifference to Plaintiff's First Amendment rights.

96. As a result of Defendants actions, Plaintiff suffered a violation of his First Amendment rights, humiliation, and mental and emotional pain and anguish.

**CLAIM IV. MUNICIPAL/ "MONELL" LIABILITY**
**(42 U.S.C. § 1983)**
**(*AS TO DEFENDANTS CLARDY AND THE JAIL TRUST*)**

97. Paragraphs 1 through 96 are incorporated herein by reference.

98. There is an affirmative link between the deprivation of Plaintiff's constitutional rights and MCDC policies, practices and/or customs which the County and/or Jail Trust promulgated, created, implemented and/or possessed responsibility for.

99. Prior to the excessive force used on Plaintiff, there had been numerous other instances of constitutional deficiencies within the MCDC that the County and/or Jail Trust were aware of but failed to alleviate.

100. These prior unnecessary uses of force demonstrate that the County and/or Jail allowed and or permitted its employees to use more force, or a higher level of force, than is reasonably necessary during encounters with inmates

101. Additionally, the present encounter, as well as the other cited above, demonstrate that the County and/or Jail Trust have allowed and or permitted its employees to escalate situations with inmates, and resort to the use of JPX guns far sooner than necessary.

102. Upon information and belief, the County and/or Jail Trust has failed to train its employees in regard to how to deescalate situations with inmates.

103. Thus, the County and/or Jail Trust has created and tolerated and maintained long-standing, unconstitutional department-wide customs, law enforcement related policies, procedures and practices, and failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference with respect to uses of force.

104. Further, the lack of medical care provided to Plaintiff after he was unnecessarily shot with the JPX guns was causally connected with customs, practices, and policies which the County and/or Jail Trust promulgated, created, implemented and/or possessed responsibility for.

105. In particular, the County and/or Jail Trust inadequately trained its staff on how to recognize and appreciate signs and symptoms which would necessitate medical treatment and had adopted a chain of command that wholly lacked supervision. As a result, jailers were permitted to engage with inmates however they so pleased without any oversight.

106. The County and/or Jail Trust knew, must have known or should have known that

-- due its obviously inadequate training, supervision and discipline -- unconstitutional conduct toward inmates the at MCDC was probable and almost certain. Despite that knowledge, the County and/or Jail Trust failed to take reasonable measure to alleviate the risks of harm.

107. There is an affirmative link between the deliberate indifference to Plaintiff's objectively serious pain and the policies, practices and/or customs that the County and/or Jail Trust promulgated, created, implemented and/or possessed responsibility for.

108. The County and/or Jail Trust, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to citizens', including Plaintiff's, health and safety.

109. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Plaintiff. suffered injuries and damages as alleged herein.

**WHEREFORE,** based on the foregoing, Plaintiff prays that this Court grant the relief sought including but not limited to actual and compensatory damages, and punitive damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted by:

SMOLEN LAW, PLLC


/s/ *John W. Warren*
Donald E. Smolen, II, OBA #19944
John W. Warren, OBA #33635
611 S. Detroit Avenue
Tulsa, OK 74120
P: (918) 777-4LAW (4529)
F: (918) 890-4529
don@smolen.law
jack@smolen.law
*Attorneys for Plaintiff*