IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BYRON CORNIELUS YOUNG, JR.,<br><br>**Plaintiff,**<br><br>v.<br><br>MCCURTAIN COUNTY JAIL TRUST, SHERIFF OF MCCURTAIN COUNTY, in his official capacity, LARRY HENDRIX, in his individual capacity, KENNETH JENNINGS, in his individual capacity, KURTIS FIELDS, in his individual capacity, and BRITTANY STOCKTON, in her individual capacity,<br><br>**Defendants.** | Case No. 24-CV-138-JFH-GLJ |

## OPINION AND ORDER

Before the Court are two Report and Recommendations of United States Magistrate Judge Gerald L. Jackson. In his first Report and Recommendation, Judge Jackson recommends that the Court deny the motion to dismiss [Dkt. No. 11] filed by Defendants Kenneth Jennings and Brittany Stockton in their individual capacities. Dkt. No. 27. In his second Report and Recommendation, Judge Jackson recommends granting in part and denying in part the motion to dismiss [Dkt. No. 15] filed by the McCurtain County Jail Trust ("Jail Trust") and Kevin Clardy in his official capacity as McCurtain County Sheriff and Chairman of the Jail Trust's Board of Trustees. Dkt. No. 28. Defendants timely objected to the Report and Recommendations, and Plaintiff has responded to those objections. Dkt. Nos. 29-32. For the following reasons, the Court ADOPTS both Report and Recommendations, DENIES the motion to dismiss filed by Jennings and Stockon, and GRANTS IN PART and DENIES IN PART the motion to dismiss filed by Clardy and the Jail Trust.

1

## BACKGROUND

This lawsuit arises from several incidents that occurred while Plaintiff was an inmate at McCurtain County Jail in 2021 and 2022. Plaintiff alleges that on or about September 7, 2021, Defendant Jennings shot Plaintiff with a pepper spray ball without justification, and along with Defendant Fields, subsequently failed to provide Plaintiff with medical care. Dkt. No. 2 at 5-7. Then, on June 5, 2022, Plaintiff alleged he was subjected to excessive force again when Defendant Stockton shot him with a pepper spray ball without cause. *Id.* at 7-8.

Afterwards, Plaintiff submitted written grievances to jail authorities related to Stockton's shooting and spoke with internal affairs about the incident *Id.* at 8. However, within days of submitting his complaints, Defendant Hendrix ordered Plaintiff to be transferred to the Choctaw County Jail. *Id.* While there, several inmates physically assaulted Plaintiff, but the Choctaw County Jail told him that only the McCurtain County Jail could treat his injuries. *Id.* at 9.

Ultimately, Defendant filed suit for these alleged injuries on April 19, 2024. Dkt. No. 2.[1] In his Complaint, Plaintiff alleges the following causes of action based on 42 U.S.C. § 1983:

(1) A claim against Jennings and Stockton, in their individual capacities, for Excessive Use of Force;

(2) A claim against Jennings and Fields, in their individual capacities, for Failure to Provide Medical Care;

(3) A claim against Kevin Clardy, in his official capacities as McCurtain County Sheriff and as Chairman of the McCurtain County Jail Trust Board of Trustees, and against Defendant Hendrix, in his individual capacity, for First Amendment Retaliation; and

(4) A claim against Kevin Clardy, in the above official capacities, and against the Jail Trust, for Municipal/"*Monell*" Liability.

---

[1] Plaintiff, proceeding *pro se*, originally filed suit in July 2022 for these alleged injuries. *See Young v. Bd. of Cnty. Comm'rs of McCurtain Cnty., Okla.*, 22-CV-00207-RAW-GLJ. He later obtained counsel and dismissed these claims without prejudice in April 2023. *Id.* at Dkt. Nos. 67, 69.

Dkt. No. 2 at 11-17. However, Plaintiff served the Complaint on Jennings, Clardy, and the McCurtain County Jail Trust four days after the deadline for served lapsed. Dkt. Nos. 12, 15  He served Stockon twenty-seven days after the deadline lapsed. Dkt. No. 20.

Accordingly, Stockon, Jennings, Clardy, and the Jail Trust all moved to dismiss Plaintiff's claims for failure to effectuate timely services. Additionally, Clardy and the Jail Trust moved to dismiss:

- Any claims against Clardy in his official capacity as the Chairman of the Jail Trust because they were duplicative of those against the Jail Trust;

- Any claim against Clardy in his official capacity as the Sheriff of McCurtain County because he is an improper party under Oklahoma law, and

- Plaintiff's claim for First Amendment Retaliation for failure to state a claim.

Dkt. No. 15.[2] Judge Jackson recommended dismissing Clardy in his capacity as Chairman of the Jail Trust but denying the rest of the Defendants' motions. Dkt. Nos. 27, 28. The Court agrees with Judge Jackson as set forth below.

## STANDARD OF REVIEW

After a Report and Recommendation has been issued, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.; *see also*, 28 U.S.C. § 636(b)(1). However, any objections not properly raised

---

[2] The Court notes that Defendant Hendrix filed his Answer on August 20, 2024, and does not join any of these motions. Dkt. No. 17. Defendant Fields does not join these motions either. In fact, it seems that a summons was never issued to Fields, nor does he appear as a named defendant in the captions of the Complaint or of the parties' filings. However, the body of Plaintiff's Complaint does allege a cause of action against him. *See* Dkt. No. 2 at 3-4, 6-7, 13.

3

are waived for purposes of review by the District Court. *Klein v. Harper*, 777 F.3d 1144 (10th Cir. 2015); *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022). An objection to a recommendation is properly raised if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* "In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate." *Davis v. GEO Grp. Corr., Inc.*, No. CIV-16-00462-PRW, 2023 WL 2536727, at *1 (W.D. Okla. Mar. 16, 2023) (citing *Summers v. State of Utah*, 927 F.2d 1165, 1167-68 (10th Cir. 1991)). "Mere regurgitation of original arguments does not trigger the Court's obligation to perform de novo review." *United States v. Kirby*, No. 23-CR-026-JFH, 2023 WL 3956685, at *2–3 (E.D. Okla. June 12, 2023).

## AUTHORITY AND ANALYSIS

**I.     DEFENDANT JENNINGS AND STOCKTON'S MOTION TO DISMISS**

Defendants Jennings and Stockton originally moved to dismiss Plaintiff's claims based on Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. Dkt. No. 11. In that motion, they argued that Plaintiff's service failed to comply with Rule 4(m), which states:

> If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). However, Judge Jackson ultimately recommended denying their motion to dismiss. Dkt. No. 27. Defendants timely objected to his recommendations. Dkt. No. 29. For the reasons below, the Court overrules their objections and denies their motion.

4

Tenth Circuit precedent provides a two-step process for challenges to timeliness of service under Rule 4(m). *See Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). First, the Court must analyze whether Plaintiff has shown good cause for the failure to timely effect service. *Id.* If Plaintiff demonstrates good cause for the delay, the Court must grant an extension of time. *Id.* Second, if Plaintiff fails to establish good cause, the Court must decide if Plaintiff should be granted a permissive extension of time. *Id.*

Here, there is no dispute that Plaintiff failed to serve Defendant Jennings and Stockton within the ninety-day deadline, and Plaintiff does not argue that he had good cause for his delay in timely serving Jennings and Stockon. Therefore, there is no good cause to warrant a mandatory extension of Plaintiff's deadline. The Court will thus proceed to step two of its analysis.

Under step two, the Court must analyze whether a permissive extension of time is warranted. *See Espinoza*, 52 F.3d at 841. "In determining whether to grant a permissive extension, the pertinent considerations include [Plaintiff's] [1] pro se status, [2] the complexity of the service requirements for federal agencies, [3] the danger of prejudice to the defendants, and [4] the possible expiration of the statute of limitations on the claims." *Shepard v. United States Dep't of Veterans Affs.*, 819 F. App'x 622, 624 (10th Cir. 2020) (citing *Espinoza*, 52 F.3d at 842).

Applying these factors, Judge Jackson ultimately recommended that the Court grant a permissive extension. Dkt. No. 27. In doing so, Judge Jackson determined that factors one and two weighed against an extension because Plaintiff is not proceeding pro se and no federal entity is a party to this lawsuit. *Id.* at 3. However, factors three and four—the danger of prejudice to Defendants and the expiration of Plaintiff's claims based on the statute of limitations—weighed in favor of an extension. *Id.* In particular, Judge Jackson concluded that Plaintiff's four and twenty-seven day delay in serving Jennings and Stockon did not substantially prejudice them.

5

Furthermore, he emphasized that Plaintiff's claims would be barred by the statute of limitations if the Court dismissed his case. *Id.* Noting that "courts prefer to decide issues on the merits rather than on technicalities," he ultimately found these last two factors sufficient for an extension. *Id.* at 3-4 (quoting *Runnebaum v. Magellan Healthcare, Inc.*, 2019 WL 4536308, at *2 (D. Kan. Sept. 19, 2019)

Defendants make three objections to Judge Jackson's Report and Recommendation. Dkt. No. 29. First, they argue that Judge Jackson failed to account for *DeSpain v. Salt Lake Area Metro Gang Unit*, which held that "[t]he absence of prejudice to the defendants, by itself, does not equate to good cause on the part of the plaintiffs." 13 F.3d 1436, 1439 (10th Cir. 1994). However, as Plaintiff correctly points out, *Despain*'s holding was based on Rule 4(j)—an earlier version of Rule 4(m)—which "allowed the district court to extend the time for service of the summons and complaint only upon a showing of 'good cause.'" *Espinoza*, 52 F.3d at 840 (citing Fed. R. Civ. P. 4(j) (1987); *Despain*, 13 F.3d at 1437). But, "the 1993 amendments substantially changed the scope of discretion to be exercised by district courts under this rule," and the current version of Rule 4(m) "broadens the district court's discretion by allowing it to extend the time for service even when the plaintiff *has not shown good cause*." *Id.* at 840-41 (emphasis added). Accordingly, Judge Jackson did not err in disregarding *Despain*'s analysis of an outdated version of Rule 4(m).

Their second objection also faults Judge Jackson's analysis of the third factor for "fail[ing] to take into account Plaintiff's repeated failure to prosecute this claim." Dkt. No. 29 at 2. They point out that this lawsuit is not the first lawsuit Plaintiff has filed against them, that this litigation has been "looming over their heads for multiple years now," and that they "must have some assurance as to the effective and timely adjudication of claims brought against them." *Id.* Their concerns about expeditious litigation are certainly understandable. However, the Court agrees

6

with Judge Jackson that Jennings and Stockton have not suffered substantial prejudice by Plaintiff's delayed service. Indeed, a respective delay of four and twenty-seven days is not unduly prejudicial, especially where timeliness is the only basis for invalidity of service. And this Court and others have permitted an extension in cases involving a similar or greater delay. *See, e.g.*, *Harris v. McCurtain Cnty. Jail. Tr.*, 2023 WL 4550928 (E.D. Okla. July 14, 2023) (recommending a permissive extension involving twenty-six-day delay), *report and recommendation adopted*, 2024 WL 1159692 (E.D. Okla. Mar. 18, 2024); *DatRec, LLC v. AllegianceMD Software, Inc.*, No. 21-CV-543, 2022 WL 2758527, at *2 (N.D. Okla. July 14, 2022) (permitting extension involving forty-seven-day delay). Accordingly, their second objection is unpersuasive.

Finally, Jennings and Stockton contend that Judge Jackson weighed the fourth factor too heavily. According to them, it is Plaintiff's own fault that he missed the ninety-day deadline and put his claims in danger of expiring under the statute of limitations. They then assert that to "excuse [Plaintiff's] noncompliance simply because of its consequences runs counter to the very purpose of having these rules in place. This cannot be tolerated. If it is, it will only continue." Dkt. No. 29 at 3. The Court disagrees. Although Rule 4(m) generally requires serving a defendant within ninety-days of filing a complaint, Congress amended Rule 4(m) to allow a district court "to extend the time for service even when the plaintiff has not shown good cause" for his non-compliance. *Espinoza*, 52 F.3d at 840-41. Following these amendments, the Tenth Circuit instructed lower courts to consider a variety of factors on whether to grant an extension, including whether a denial of an extension would effectively preclude a plaintiff from refiling his claims. *Id.* at 842. In other words, considering and potentially excusing Plaintiff's non-compliance based on the statute of limitations does not circumvent Rule 4(m). And when the Court compares the danger

of Plaintiff's claims being forever barred to the slight delay in Defendants being served, the Court agrees this factor strongly favors an extension.

For these reasons, the Court ADOPTS Judge Jackson's Report and Recommendation. Dkt. No. 27. The Court will grant Plaintiff a permissive, retroactive extension to serve Jennings and Stockton, and their motion to dismiss is denied. Dkt. No. 11. However, the Court's tolerance is low for additional non-compliance with the Federal Rules of Civil Procedure. Any future extensions of time should be requested before a deadline expires.

**II.  DEFENDANT CLARDY AND MCCURTAIN COUNTY JAIL TRUST'S MOTION TO DISMISS**

Plaintiff also sued the McCurtain County Jail Trust and Defendant Clardy in his official capacity as Sheriff of McCurtain County and as Chairman of the McCurtain County Jail Trust's Board of Trustees. Dkt. No. 2 at 14-17. Specifically, he sued the Jail Trust for *Monell* liability and Defendant Clardy for First Amendment Retaliation and *Monell* liability. *Id.* Both Defendants moved to dismiss Plaintiff's claims against them, raising three primary arguments. Dkt. No. 15. First, Plaintiff failed to effectuate timely service pursuant to Fed. R. Civ. P. 4(m). Second, the claims against Clardy in his capacity as the Jail Trust Chairman should be dismissed as duplicative, and the claims against him in his capacity as McCurtain County Sheriff should be dismissed because he is not a proper party. Finally, they argued that Plaintiff failed to plausibly allege a First Amendment Retaliation claim against Clardy.

Judge Jackson ultimately recommended denying most of their motion, although he recommended dismissal against Clardy in his capacity as Chairman of the Jail Trust. Dkt. No. 28. Clardy and the Jail Trust then timely objected to the Magistrate Judge's Report and Recommendation. Dkt. No. 30. However, they only object to two of Judge Jackson's

conclusions—that Clardy is a proper party as McCurtain County Sheriff and that Plaintiff sufficiently alleged a First Amended Retaliation claim. The Court will address both objections.[3]

### A. The McCurtain County Sheriff is a proper party.

Clardy and the Jail Trust first object to Judge Jackson's recommendation that Clardy is a proper party in his capacity as McCurtain County Sheriff. A suit against a county sheriff is essentially a suit against the county itself. *See Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009). However, they argue that when McCurtain County created the Jail Trust to manage the McCurtain County jail, the County divested itself and its sheriff of policy-making authority and liability for constitutional violations occurring within that jail. So, according to them, neither the County nor the County Sheriff in his official capacity can be sued under § 1983. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies . . . ."). The Court disagrees.

The Court will start its analysis by examining Oklahoma law governing the relationship between county sheriffs and public trusts created to run county jails. According to the Oklahoma Attorney General, county sheriffs have a constitutional duty to maintain his or her county's jail. *See* Okla. A.G. Opinion No. 07-35 (Oct. 23, 2007) (citing Okla. Const. Art. XVII, § 2). The Legislature has codified this constitutional duty in various Oklahoma statutes. For example, 19 Okla. Stat. § 513 provides that "[t]he sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable." Furthermore, 57 Okla. Stat. § 47 also states that "[t]he sheriff, or such person designated by law in place of the sheriff, shall have charge of the

---

[3] Defendants filed a copy of the Jail Trust's Trust Indenture with their Partial Objections. *See* Dkt. No. 30-1. Because this exhibit was not presented to Judge Jackson, the Court will not consider it here. *See Muhleisen v. Principi*, 73 F. App'x 320, 322 (10th Cir. 2003).

county jail of his or her county and of all persons by law confined therein." Together, these authorities provide a duty for the sheriff to operate and maintain the county jail and make him liable for unlawful acts arising from that constitutional duty.

Relevant for this case, the Oklahoma Legislature allows counties to create a public trust under 19 Okla. Stat. §§ 904.1 *et seq.* and 60 Okla. Stat. § 176 "for the purpose of operating a county jail in order to promote and preserve the public safety of the county." Okla. A.G. Opinion No. 07-35. If a county does so, then that trust "steps into the shoes of the county and the sheriff for the purpose of operating the county jail." Okla. A.G. Opinion No. 04-17 (Apr. 27, 2004). Therefore, according to the Attorney General, "a county jail operated by a public trust has the same duties as a jail operated by the county itself through the sheriff." *Id.* But, though the public trust fills county's shoes to operate the jail, the public trust still remains a "separate and distinct" legal entity from the county. 60 Okla. Stat. § 176.1(A)(2).

"However, as other district courts have recognized, these statutes do not necessarily relieve the sheriff of his own statutorily imposed duties and liabilities with respect to the operation of a county jail." *Bonilla v. Gerlach*, No. 23-CV-1060, 2024 WL 457172, at *3 (W.D. Okla. Feb. 6, 2024); *see also Folts v. Grady Cnty. Bd. of Cnty. Commissioners*, No. 15-CV-996, 2017 WL 11557921, at *6 (W.D. Okla. July 25, 2017); *Hill v. Okmulgee Cnty. Crim. Just. Auth.*, No. CIV-18-394, 2019 WL 11000375, at *2 (E.D. Okla. Apr. 18, 2019). As Judge White explained in a similar case, "nothing in the statutory language [of 60 Okla. Stat. § 176] allowing counties to create public trusts to carry out officials' duties relieve[s] the Sheriff of his statutory liability." *Palmer v. Board of County Commissioners of Sequoyah County*, No. 07-CV-012, 2007 WL 3407057, at *1 (E.D. Okla. Nov. 9, 2007). And although "counties may alter their sheriffs' duties with regard to

10

running the county jails . . . . it does not logically follow[] that a sheriff's duty to oversee the running of the jail and ultimately his liability for civil rights violations at the jail is lifted." *Id.*

Clardy and the Jail Trust assert these well-reasoned opinions are contrary to Oklahoma Supreme Court case law. Dkt. No. 30. However, they discuss only one Oklahoma Supreme Court case—*Oklahoma City Zoological Trust v. Public Employees Relations Board*, 158 P.3d 461 (Okla. 2007)—for this proposition. *Id.* at 2. There, the Oklahoma Supreme Court analyzed whether the Oklahoma Municipal Employee Collective Bargaining Act ("OMECBA") applied to a zoo trust created under Title 60 for the benefit of Oklahoma City. *Oklahoma City Zoological Trust*, 158 P.3d at 463. The OMECBA applies to entities which the state or a municipality created and controlled, and the trust argued it qualified as one of these entities. *Id.* at 465. However, the trust was not created by Oklahoma City, nor did the City exert de jure or de facto control over the trust's employees. *Id.* at 465-66. Accordingly, the Oklahoma Supreme Court held the OMECBA did not apply to the trust and its employees. *Id.* at 467.

*Oklahoma City Zoological Trust* did not examine whether a county divests its sheriff of his constitutional duties and liability when it creates a public trust to manage its jail. Nevertheless, Clardy and the Jail Trust argue this case is still relevant because of its similarity in facts— similar to the zoo trust in *Oklahoma City Zoological Trust*, McCurtain County does not exert any control over the Jail Trust and there is no employment relationship between County and Jail Trust employees. Dkt. No. 30 at 3. However, unlike the OMECBA, Plaintiff's claims under § 1983 do not require the County to exert policy-making authority over the Jail Trust, but rather, the jail itself. And neither *Oklahoma City Zoological Trust* nor the Oklahoma Attorney General Opinions that the Defendants rely upon conclude that a county divests its sheriff of policy-making authority over a county jail when it creates a public trust.

11

Therefore, the Court will not depart from the above federal opinions holding that a county or its sheriff remain liable under § 1983 for constitutional violations occurring in a jail managed by a public trust. And based on the allegations in the Complaint, where Clardy allegedly indicated that he had full control over the jail and its employees as McCurtain County's Sheriff, it is plausible that the County "retained policymaking authority with regard to at least some policies and procedures at the [county jail]." *Payne v. Dep't of Corr. of Okla.*, 2013 WL 3097172, at *4, n. 2 (E.D. Okla. June 18, 2013). For these reasons, Clardy, or whoever fills his role as McCurtain County Sheriff, is a proper party to this action. *See* Fed. R. Civ. P. 25(d).

### B. Plaintiff sufficiently alleged a First Amendment Retaliation claim.

Finally, Clardy and the Jail Trust also object to Judge Jackson's conclusion that Plaintiff stated a claim for First Amendment Retaliation. To sufficiently plead a First Amendment retaliation claim, Plaintiff must allege facts that:

(1) He was engaged in constitutionally protected activity;

(2) Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and

(3) Defendants' adverse actions were substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*See Irizarry v. Yehia*, 38 F.4th 1282, 1288 (10th Cir. 2022); *see also Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). To satisfy these elements, Plaintiff alleged that he filed grievances with the McCurtain County Jail about Stockon's conduct. Dkt. No. 2 at 8. Defendant Hendrix subsequently transferred him to the Choctaw County jail the day after he spoke with "internal affairs" about Stockton's conduct. *Id.* He was then physically attacked by several inmates while he was at Choctaw County jail, but the Choctaw County jail denied him medical care because that responsibility allegedly belonged to the McCurtain County jail. *Id.* at 8-9, 14-15. Consequently, Plaintiff alleges he was transferred to Choctaw County in retaliation for complaining and that

12

transferring him to a jail where he could not receive medical care would chill a person of ordinary fitness from complaining again. *Id.*; *see also* Dkt. No. 19 at 13.

Based on these allegations, Judge Jackson concluded that Plaintiff sufficiently pled a First Amendment Retaliation claim and recommended denying the Clardy and the Jail Trust's motion to dismiss. Dkt. No. 28. In doing so, Judge Jackson reasoned that "[a]lthough, a prisoner does not have a constitutional right to remain at a particular facility," a transfer to another facility can produce disruptive consequences that impacts a prisoner's rights. *Id.* at 12 (citing *Jenner v. Brightwell*, 2016 WL 11383921, at *5 (D. Colo. Feb. 25, 2016), *report and recommendation adopted*, 2016 WL 1248663 (D. Colo. Mar. 29, 2016)). Accordingly, he determined that being "transferred to a facility that limited [Plaintiff's] rights and/or privileges to medical care sufficiently pleads an injury that would chill a person of ordinary firmness from submitting written grievances." *Id.* at 13. He thus found that the first two elements of Plaintiff's claim were satisfied.

He similarly found that Plaintiff established the third element of his retaliation claim. For this element, Clardy and the Jail Trust originally argued—and repeat again in their Partial Objection—that Plaintiff failed to plead that Defendants transferred him "with the intent to chill Plaintiff in the exercise of his constitutional rights." Dkt. No. 25 at 10; Dkt. No. 30 at 6. Judge Jackson rejected this argument. In doing so, he relied upon *Allen v. Avance*, which provides that "an inference of whether the defendant's response was substantially motivated by protected conduct" can be made where a plaintiff alleges that:

(1) the defendants were aware of the protected activity;

(2) the plaintiff directed his complaint to the defendants' actions; and

(3) the alleged retaliatory act was in close temporal proximity to the protected activity.

491 F. App'x. 1 (10th Cir. 2012) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)) (internal quotations omitted). Judge Jackson found that the Complaint satisfied all these elements for several reasons. First, Plaintiff submitted written grievances and talked to internal affairs at the McCurtain County Jail, so Defendants were aware of his protected activity. Second, Plaintiff's complaints were about Stockton's actions, so his complaint was about his treatment at the jail. Finally, Plaintiff was transferred the day after talking to internal affairs, so the alleged retaliatory act was in close proximity to his protected activity. Accordingly, Judge Jackson found that Plaintiff satisfied the third and final element of his First Amendment Retaliation claim. Dkt. No. 28 at 15.

The Court agrees with Judge Jackson's analysis, and Clardy and the Jail Trust provide no persuasive arguments to the contrary. In fact, their Partial Objection reraises most of their arguments that Judge Jackson already rejected. The only novel argument they assert is that "this is a circumstance where the existing case law does not adequately address the factual circumstances of this case" and that "a plaintiff should be required to show that the transfer would chill a person of ordinary firmness from *continuing* to engage in the protected speech activity." Dkt. No. 30 at 7 (emphasis in original). But assuming, *arguendo*, that the Court could adopt their articulation of the law, Plaintiff would still satisfy their own legal standard. Indeed, he specifically pled that their retaliation for complaining about Stockton's conduct "would have chilled a person of ordinary fitness from continuing to engage in protected speech, including bringing his complaints to jail authorities or the Court, and reporting crimes to police." Dkt. No. 2 at ¶ 87. Accordingly, their arguments are unpersuasive.

For these reasons, the Court ADOPTS Judge Jackson's Report and Recommendation. Dkt. No. 28. The Court will grant Plaintiff a permissive, retroactive extension to serve Clardy/the McCurtain Count Sheriff and the Jail Trust. Additionally, the Court will dismiss Plaintiff's claims

against Clardy in his official capacity as the Chairman of the Jail Trust. However, the Court denies the rest of their motion to dismiss. Dkt. No. 15.

## CONCLUSION

IT IS THEREFORE ORDERED that both of Judge Jackson's Report and Recommendations are ADOPTED. Dkt. Nos. 27, 28. Therefore, the Court DENIES Defendant Jennings and Stockton's motion to dismiss in its entirety. Dkt. No. 11. Additionally, the Court will GRANT IN PART and DENY IN PART the Clardy and the Jail Trust's motion to dismiss. Dkt. No. 15. In doing so, the Court will GRANT their motion to dismiss Plaintiff's claims against Clardy in his official capacity as the Chairman of the Jail Trust. However, the Court will DENY the remainder of their motion to dismiss.

IT IS FURTHER ORDERED that Plaintiff is granted a permissive, retroactive extension to serve Jennings, Stockton, the McCurtain County Sheriff in his official capacity, and the Jail Trust.

It is so ordered this 9th day of February, 2026.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE